UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Sanjeev Nanda,<br><br>        Plaintiff,<br><br>   v.<br><br>I.C. System Inc. and<br>Smith Jadin Johnson, PLLC,<br><br>        Defendants. | Civil File No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. This Court's jurisdiction arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

3. Venue is proper in this District because the acts and transactions at issue occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff Sanjeev Nanda is a natural person and a resident of Minnesota. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

5.      Defendant I.C. System Inc. ("IC System") is a corporation organized under the laws of the state of Minnesota, headquartered in Vadnais Heights, Minnesota.

6.      IC System's business includes debt-collection activity against Minnesota consumers for alleged debts incurred in Minnesota.  IC System is licensed with the State of Minnesota (File No. E-1124).

7.      IC System is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because IC System uses instrumentalities of interstate commerce and/or the mails in a business the principal purpose of which is the collection of debts.  In addition, IC System regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  The principal purpose of IC System is the collection of debts; more than half of its revenues are derived from debt collection; and, in this case, IC System engaged in debt-collection activity against Plaintiff.

8.      IC System is licensed as a collection agency with the Minnesota Department of Commerce.

9.      Defendant Smith Jadin Johnson, PLLC ("SJJ") is a professional Limited Liability Company organized under the laws of the state of Minnesota, headquartered in Bloomington, Minnesota.

10. SJJ's business includes debt-collection activity against Minnesota consumers for alleged debts incurred in Minnesota. SJJ is licensed with State of Minnesota (File No. 661163600023).

11. SJJ's website (https://sjjlawfirm.com/ ) lists "collecting amounts owed" and "Collections" as part of its practice areas webpage.

12. SJJ is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because SJJ uses instrumentalities of interstate commerce and/or the mails in a business the principal purpose of which is the collection of debts. In addition, SJJ regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. A principal purpose of SJJ is the collection of debts, and, in this case, SJJ engaged in debt-collection activity against Plaintiff.

13. A review of publicly filed complaints by SJJ shows a significant number of debt collection lawsuits, including other debt collection lawsuits for Timberline Roofing & Contracting Inc. *See e.g.*, Court File Nos. 27-co-22-718 (collection for home roofing repair); 02-co-22-336 (collection for home siding work); 27-co-22-156 (collection of residential lease debt); 70-co-21-15128 (collection for home roofing repair); 27-co-21-7264 (collection for engineering services); 10-cv-21-877 (collection for home roofing and siding work); 27-co-21-7150 (collection for home roofing repair); 02-cv-21-4389 (collection for home

3

garage floor concrete work); 02-cv-21-4411 (enforcing judgment based on home roofing collection); 27-co-21-5755 (collection for home roofing repair); 62-cv-21-4278 (enforcing judgment based on home hail damage repair collection); 13-cv-21-2609 (enforcing judgment based on home construction collection); 82-cv-21-2609 (enforcing judgment based on association dues collection); 27-cv-21-7117 (collection for home roofing repair); 27-cv-21-6361 (enforcing judgment based on home hail damage repair collection); 02-co-21-636 (collection for home construction and repair work); 27-cv-20-2809 (collection for home hail damage repair); 27-co-20-2811 (collection for home construction work); 27-co-20-2738 (collection for home construction work); 27-co-20-163 (collection for home roofing repair); 62-co-20-1298 (collection for home roofing repair); 27-cv-20-2588 (enforcing judgment based on residential lease collection case); 27-cv-20-2620 (collection for condominium fees); 62-co-20-222 (collection for home roofing repair); 86-co-19-1055 (collection for home repairs); 27-cv-19-18903 (enforcing judgment based on home exterior repair collection case); 74-co-19-2050 (enforcing judgment based on residential ice dam repair and roof replacement collection case); 40-co-19-181 (collection for residential roofing work); 27-co-19-8370 (collection for engineering services related to home window repair); 74-co-19-155 (collection for home ice dam repairs and roof replacement); 30-cv-19-633 (enforcing judgment for home construction and/or

restoration work); 27-cv-19-9814 (enforcing judgment based on exterior repair work collection case); 30-co-19-105 (collection for home construction and/or restoration work); 27-co-19-226 (collection for home construction and/or restoration work); 27-co-19-200 (collection for home exterior repairs); 19HA-cv-18-4420 (enforcing judgment based on home roof replacement collection case); 19HA-co-18-275 (collection for home roof replacement); 27-co-18-7056 (collection for home roofing, siding, and gutter improvements); 27-cv-18-13661 (enforcing judgment for home storm damage repair collection case); 10-co-18-263 (collection for home improvements); 27-cv-22-10692 (collection and foreclosing mechanic's lien for home exterior remodeling); 27-cv-22-10388 (collection and foreclosing mechanic's lien for home exterior remodeling); 27-cv-22-10407 (collection and foreclosing mechanic's lien for home exterior construction work); 27-cv-22-9199 (collection and foreclosing mechanic's lien for home roofing, siding, and associated work); 19HA-co-22-240 (collection for home exterior remodeling); 02-cv-22-2373 (collection and foreclosing mechanic's lien for home exterior remodeling); 05-co-22-159 (collection for roofing and other exterior remodeling); 27-co-22-2422 (collection of amount due for sale of motorcycle); 62-cv-22-612 (collection and foreclosing mechanic's lien for home roofing work); 27-co-22-2064 (collection for home exterior work); 70-co-22-4456 (collection for home roofing work); 27-cv-22-2048 (collection and foreclosing

mechanic's lien for home roofing and associated work); 27-cv-22-1742 (collection and foreclosing mechanic's lien for home roofing and associated work); 27-cv-22-1766 (collection and foreclosing mechanic's lien for home roofing work); 86-cv-21-5434 (collection and foreclosing mechanic's lien for home roof repair and associated work); 74-cv-21-1250 (collection and foreclosing mechanic's lien for home construction materials and services); 19HA-cv-21-2521 (collection and foreclosing mechanic's lien for home roofing and bathroom remodeling); 02-cv-21-3676 (collection and foreclosing mechanic's lien for home roof repair and associated work); 27-cv-21-9406 (collection and foreclosing mechanic's lien for home roofing and associated work); 27-cv-20-16459 (collection and foreclosing mechanic's lien for work on home roofing, gutters, windows, and wraps); 27-cv-20-14244 (collection and foreclosing mechanic's lien for home roofing, siding, and associated work); 52-cv-20-365 (collection and foreclosing mechanic's lien for work on home roofing, siding, windows, doors, gutters, wraps, and screens); 58-cv-20-205 (collection and foreclosing mechanic's lien for home roof repair and associated work); 74-cv-21-1250 (collection and foreclosing mechanic's lien for home construction materials and services); 71-cv-21-287 (collection and foreclosing mechanic's lien for home roofing, siding, and associated work).

14. Upon information and belief, a significant number of served, but unfiled, debt collection complaints have been generated by SJJ, including the Mower County state court complaint against Plaintiff described herein.

15. Amanda Linden, the SJJ attorney who signed the state court debt collection complaint against Plaintiff, has an extensive history of debt collection legal work in Minnesota.

16. Ms. Linden was formerly an attorney at Messerli & Kramer, P.A. Ms. Linden's LinkedIn page describes her work at Messerli & Kramer as "Civil litigator representing corporations, banks, and businesses in debtor/creditor disputes."

17. Upon information and belief, Ms. Linden joined SJJ to bolster SJJ's debt collection litigation practice. Ms. Linden's LinkedIn page describes her work at SJJ as including "Provid[ing] guidance on Fair Debt Collection Practices Act, including recent updates and revisions by the Consumer Financial Protection Bureau. Present at Contractor Continuing Education Classes related to debtor/creditor issues and enforcement."

## FACTS

18. On July 22, 2020, an employee of Timberline Roofing & Contracting Inc. ("Timberline) met with Plaintiff to discuss possible repairs to Plaintiff's roof.

7

19. On August 13, 2020, Plaintiff gave Timberline a down payment of $10,158.21, which was more than 50% of the total price, in good faith before any work was completed.

20. Pursuant to the contract, Timberline was to "pursue [Nanda]'s best interests for a roof, siding, window and/or gutters replacement or repair . . ."

21. Timberline represented that it would complete the work within a week. Despite Timberline promising to start the work, Timberline repeatedly postponed starting the repair, as it claimed it did not have a crew of ten people to complete the work in one day.

22. On August 21, 2020, Timberline roofers finally started work, with an undersized crew of Timberline workers. The workers continued to work on the roof until after 7:00 p.m. on August 21, 2020, but Timberline did not finish the work on the roof that day.

23. When the undersized crew of Timberline workers left on August 21, 2020, the roofers did not line the roof with a tarp and left it exposed to the elements. There was heavy rain the night of August 21, 2020.

24. As a result of Timberline's failure to line the roof with a tarp, water leaked into the house. As a result of the water pouring through the roof, the insulation in the attic was soaked.

25.   Plaintiff expressed his concerns immediately to Timberline via text message that water was leaking into his house.

26.   Timberline did not come back for three weeks to assess the water damage.

27.   Timberline did not complete the repairs to Plaintiff's roof.

28.   In addition to the repair to the roof, Plaintiff and Timberline agreed that Timberline would perform additional work including replacing the gutter wraps and repairing the gutter leaks.

29.   Timberline failed to perform this work.

30.   On October 19, 2020, Randall Olchesfsky, a "Collections Officer" for Timberline sent a letter to Plaintiff attaching a final invoice in the amount of $9,950.04 (the "alleged debt.") Mr. Olchesfky's letter carbon copied "Alden Pearson, Attorney."

31.   The "alleged debt" is a consumer debt as it was alleged incurred for repairs to Plaintiff's personal property and not for any business purpose.

32.   On October 23, 2020, Olchesfsky, aware that Plaintiff was represented by counsel, called Briol & Benson to discuss the alleged consumer debt.

33.   Olchesfsky was told by a Briol & Benson attorney that Plaintiff's counsel would only speak to Timberline's counsel who had been carbon copied on

9

the October 19, 2020 letter. This is documented in a letter from Briol & Benson to C. Alden Pearson.

34. On October 23, 2020, attorney Mark Briol sent another letter by U.S. Mail and email to C. Alden Pearson indicating that Plaintiff was represented by counsel and that the alleged debt is disputed ("Dr. Nanda has serious complaints regarding the poor quality, incomplete work that Timberline performed on his home, other work that was not performed, and water damages that were caused as a result of your client's negligence.")

35. Timberline knew as early as October 23, 2020, that Plaintiff was represented by counsel regarding the disputed alleged consumer debt.

36. On June 23, 2021, Amanda Linden, a debt-collection attorney at SJJ, sent a letter to the law firm of Briol & Benson, PLLC regarding the alleged debt.

37. On July 19, 2021, an attorney from Briol & Benson, PLLC responded by email and U.S. Mail to SJJ regarding the alleged consumer debt. The July 19, 2021, letter clearly indicates that the alleged consumer debt was disputed.

38. On October 20, 2021, Amanda Linden, an attorney at SJJ, sent yet another letter to Briol & Benson, PLLC regarding the "outstanding balance."

39. SJJ's October 20, 2021, letter accurately states that "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.**"

10

40. SJJ's October 20, 2021, letter demonstrates that SJJ and its client Timberline understood that the alleged consumer debt was disputed.

41. On December 22, 2021, SJJ served a Mower County state court complaint dated December 1, 2021 and signed by Amanda Linden upon Plaintiff. The complaint alleged a debt of $9,950.04. The complaint has not been filed.

42. SJJ's debt collection complaint dated December 1, 2021 contains false representations and attempts to collect amounts not permitted under the applicable agreement and/or Minnesota law.

43. For example, SJJ's debt collection complaint dated December 1, 2021, falsely states that Plaintiff owes Timberland $9,950.04, despite the fact that the promised work was never completed.

44. In addition, the complaint alleges that Plaintiff owes "interest of 1.5% per month."

45. An "interest of 1.5% per month" converts to an annual interest rate of 18% (assuming the interest is not compounded as prohibited by Minn. Stat. 334.01).

46. Minnesota law (Minn. Stat. § 334.01) limits the interest rate to 8% ("$8 on $100 for one year."). Even if the alleged debt were valid, interest exceeding 8% annually on the alleged debt is prohibited as a matter of black-letter Minnesota law.

11

47. Plaintiff's January 12, 2022, Answer and Counterclaim further disputed the alleged consumer debt.

48. By January 12, 2022, Timberline undeniably knew two facts: (1) the alleged consumer debt was disputed; and (2) Plaintiff was represented by counsel.

49. In May of 2022, IC System falsely reported Plaintiff's alleged consumer debt to credit bureaus without indicating that the debt had previously been disputed by Plaintiff.

50. Plaintiff's Credit Score dropped by over 140 points as a result of IC System's falsely reporting the alleged debt without indicating that it was disputed by Plaintiff.

51. In June of 2022, Plaintiff received a collection communication from IC System.

52. Upon information and belief, IC System had actual knowledge that Plaintiff was represented by counsel by June of 2022.

53. The June 2022 collection communication was sent directly to Plaintiff and not sent to Plaintiff's legal counsel, despite Timberline and IC System's actual knowledge that Plaintiff was already represented by counsel.

54. The June 2022 collection communication states "**I.C. System, Inc. is a debt collector.** We are trying to collect a debt that you owe to Timberline Roofing and Contracting." (emphasis in original).

55. IC System's June 2022 collection communication contains false representations and attempts to collect amounts not permitted under the applicable agreement and/or Minnesota law.

56. For example, IC System's June 2022 collection communication falsely states that Plaintiff owes $9,950.04, despite the fact that the promised work was never completed by Timberline.

57. The June 2022 collection communication states "Timberline Roofing and Contracting, has placed your past due balance for account number 20-625 in our office."

58. This statement in the June 2022 collection communication indicates that the right to collect the alleged debt had moved from Timberland to IC System.

59. However, after June of 2022, SJJ continued efforts to collect the debt by proceeding with the litigation stated by the served complaint under Minnesota law.

60. Upon information and belief, SJJ and Timberline no longer possessed the right to collect the alleged debt, but improperly continued attempts to collect the debt through litigation in violation of Plaintiff's FDCPA rights.

61. In the alternative, IC System falsely and/or misleadingly and confusingly represented to Plaintiff that it possessed the right to collect the alleged debt and improperly attempted to collect the debt in violation of Plaintiff's FDCPA rights.

62. Plaintiff was actually confused and misled by the false statements by IC System and SJJ.  Plaintiff was faced with simultaneous demands from multiple parties all claiming to possess the right to collect on the same alleged consumer debt, a debt that was not valid to begin with.  Plaintiff has lost time and incurred costs as a result of the collection efforts of IC System and SJJ.

### *FDCPA Violations*

63. SJJ's attempt to collect amounts unavailable under the contract or Minnesota law violated 15 U.S.C. § 1692f(1)

64. SJJ's false and misleading statements described herein violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), and 1692e(10).

65. SJJ's false and misleading statements caused Plaintiff an informational injury as it misled him with regard to his legal and contractual rights.

66. IC System's direct communication with a represented party violated 15 U.S.C. § 1692c(a)(2).

67. IC System's false reporting of the alleged debt without indicating that the debt was disputed violated 15 U.S.C. § 1692e(8).

68. IC System's attempt to collect amounts unavailable under the contract or Minnesota law violated 15 U.S.C. § 1692f(1).

69. IC System's false and misleading statements described herein violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), and 1692e(10).

70. IC System's false and misleading statements caused Plaintiff an informational injury as it misled him with regard to his legal and contractual rights.

71. Defendants' conduct described herein caused particularized and concrete harm to Plaintiff. Plaintiff's statutory rights to truthful, non-misleading, non-oppressive, non-unconscionable communications and tactics in debt collection efforts were violated.

72. Defendants' violations of the FDCPA denied Plaintiff access to truthful information, which is a concrete form of informational injury under Article III, and the denial of that information on its own is sufficiently concrete. *See Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016); *Demarais v. RAzOR Capital, LLC*, 869 F.3d 685 (8th Cir. 2017).

73. Defendants' violations of the FDCPA illustrate the risk of tangible harm from debt-collector misrepresentations and other misconduct, which is an increased risk of harm that itself supports standing here.

74. Defendants' actions caused an injury that is personal to Plaintiff, and Plaintiff's claim is not a nonjusticiable generalized grievance.

## TRIAL BY JURY

75. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7; Fed. R. Civ. P. 38.

## CAUSE OF ACTION I

### (VIOLATION OF THE FDCPA AGAINST IC SYSTEM)

76. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

77. The foregoing acts and omissions by IC System constitute multiple violations of the FDCPA.

78. Specifically, IC System violated 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(2), 1692e(3), 1692e(8), 1692e(10), and 1692f(1).

79. As a result of these violations, Plaintiff has suffered concrete and particularized harm, including depriving him of his rights granted by Congress

through the FDCPA (for example, the right to accurate representations in connection with debt collection activities), as well as emotional distress.

80. As a result of these violations, Plaintiff's credit score has declined over 140 points which has and will cause financial harm to Plaintiff.

81. As a result of IC System's violations of the FDCPA, Plaintiff is entitled to actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## CAUSE OF ACTION II

### (VIOLATION OF THE FDCPA AGAINST SJJ)

82. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

83. The foregoing acts and omissions by SJJ constitute multiple violations of the FDCPA.

84. Specifically, IC System violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(10), and 1692f(1).

85. As a result of these violations, Plaintiff has suffered concrete and particularized harm, including depriving him of his rights granted by Congress

through the FDCPA (for example, the right to accurate representations in connection with debt collection activities), as well as emotional distress.

86. As a result of IC System's violations of the FDCPA, Plaintiff is entitled to actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants as follows:

   a. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
   b. For an award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);
   c. For an award of costs of litigation including reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3);
   d. For injunctive relief requiring IC Systems to remove all negative tradelines regarding the alleged debt; and
   e. For such further and other relief as may be just and proper.

**BRIOL & BENSON, PLLC**

Dated: August 26, 2022        /s/ Mark J. Briol
Mark J. Briol (# 0126731)
Mark@briollaw.com
Darren B. Schwiebert (#0260642)
Darren@briollaw.com
3700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 756-7777
Facsimile: (612) 337-5151